BELL v. MOEN'S ASPHALTIC CEMENT CO.

(Supreme Court, Appellate Division, Second Department. July 23, 1898.)

ILLEGAL USE OF MILK CANS.
  The provisions of Laws 1887, c. 401, as amended by Laws 1890, c. 25,.
  imposing a penalty for the use of milk cans without the consent of the·
  owner's agent, only applies to cans which are in such a condition as to be·
  capable of use as milk cans, and does not apply to old, dilapidated, and
  battered cans, unfit for such use, and employed for holding tar and oil.

Appeal from judgment on report of referee.

Action by Sidney Bell against Moen's Asphaltic Cement Company..
From a judgment for plaintiff, entered on the report of a referee,
defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT,.
HATCH, and WOODWARD, JJ.

George W. Poucher, for appellant.
Joseph A. Kent, for respondent.

GOODRICH, P. J. The plaintiff, as agent of the owners of five·
milk cans, brings this action, pursuant to chapter 401 of the Laws·
of 1887, as amended by chapter 25 of the Laws of 1890, to recover five
penalties of $50 each for the possession and use of such cans by the·
defendant without the consent of the plaintiff, as such agent. The·
statute (section 1) makes it unlawful for any person, "without 'the
consent of the agent of the owner or owners or shipper or shippers,
to use, or sell, dispose of, buy or traffic in any milk or cream can or·
cans, belonging to any dealer or dealers, or shipper or shippers of milk
or cream residing in the state of New York or elsewhere, who may
ship milk or cream to any city, town or place within this state, hav-
ing the name or initials of the owner or owners of such dealer or
dealers, or shipper or shippers stamped, marked or fastened on such
can or cans or to willfully mar, erase or change by re-marking or
otherwise said name or initials of any such owner or owners or dealer
or dealers, or shipper or shippers so stamped, marked or fastened upon
said can or cans." Section 2 provides that the fact of any person,
without the consent of the agent of the owner, etc., either using or·
having in his possession or control any such can, shall be presumptive
evidence of the unlawful use of such can. As this possession affords
only presumptive evidence of unlawful use, such presumption may be·
rebutted by proof that the defendant had made no unlawful use of the·
cans within the statute.

The real question in the case is whether the use of the cans by·
the defendant falls within the purview of the statute in question.
The act, as amended, imposes a penalty of $50 for each can found in
the possession of any person, recoverable by action brought by the·
agent of the owner. Being highly penal, this act must be strictly
construed, and strict construction requires that the cans the use of
which is complained of shall be in such a condition as to be capable·
of use as milk cans; and the act may not be extended to cover cans·
which do not fall within the purview of the statute. The record dis-

closes that the cans were not of that character. The defendant is a corporation engaged in the business of asphalt roofing, and the cans came into its possession, when or how does not clearly appear, but they were used by it for holding tar and oil. Mr. Deakes, one of the owners, testified that the life of a can depends upon its usage; sometimes they last for five years; sometimes they are unable to make a second trip; that old cans are used at the creameries for pot cheese, and when they cannot be thus used, and have become unfit for dairy use, they are piled up, "thousands of them," in a sort of can refuse heap, both before and after the act of 1887; that people helped themselves sometimes to them; that they were not broken up, and sold, because the material was not worth anything,—in other words, that they were regarded as of no value for dairy use. It is manifest, therefore, that a time comes when the owner of such cans gives no further attention to them, and becomes indifferent to their control. It does not clearly appear when the particular five cans came into the possession of the defendant. It had a great many of such cans, and the secretary of the corporation and a workman testified that, while they could not specify particularly the condition of the five cans, all which the company had in use were old, dilapidated, and battered, some without covers, some without rims; that they were rusty, had holes in them, and would not hold milk; that some were picked up in vacant lots; that, before they would even hold tar, they had to have a coating of asphalt run around the inside; and that they were used only to hold tar. This is corroborated by the plaintiff, who says that, when he saw the five cans, they all contained, or had contained, tar and oil. It further appears that the plaintiff was engaged for about an hour in "pecking off" the coating of the cans, so as to learn the numbers and initials for identification. This evidence justified the finding of the referee that, "at the time the defendant obtained possession of them, they were in a worn and battered condition, of little or no value, and unfit for use for dairy purposes." We cannot therefore agree with the learned referee that the defendant was liable under the statute. The cans in question, probably when they came into the possession of the defendant, and certainly when they were discovered by the plaintiff, had practically ceased to be milk cans or useful for dairy purposes, just as surely as if they had been battered together into old metal, ready only for the melting pot. The use by the defendant of such cans, lined with hard asphalt, for holding tar and oil, was not within the inhibition of the statute.

The judgment should therefore be reversed.

Judgment reversed, and new trial granted, before a new referee to be appointed at special term; costs to abide the event. All concur.