## SCHMIDT v. JUSTUS.

### (Supreme Court, Appellate Term. February 28, 1905.)

1. MILK CANS—UNLAWFUL DETENTION—STATUTES.

Laws 1902, p. 1135, c. 482, § 29, provides that no person, without the consent of the owner, shipper, or his agent, shall use, sell or dispose of, buy or traffic in, any can, irrespective of its condition or the use to which it may have been applied, belonging to any dealer in, or shipper of, milk or cream within the state. *Held*, that the clause "irrespective of its condition or the use to which it may have been applied" referred only to cans which might be repaired, or which, though capable of being used as milk cans, were used for other purposes, and that the section did not apply to cans in such condition as not to be susceptible of further use for milk.

2. SAME—TRIAL—DISMISSAL OF COMPLAINT.

Where, in a suit to recover the penalty imposed by Laws 1902, p. 1135, c. 482, for the alleged unlawful traffic in milk cans, the court dismissed the complaint before plaintiff had rested, on introduction of evidence that plaintiff found the can in question full of ashes, with its top cut off, beside defendant's house, the judgment will be reversed, in order that the facts with reference to the condition of the can at the time defendant obtained it could be more fully developed.

Appeal from Municipal Court, Borough of the Bronx, Second District.

Action by Frederick J. Schmidt against Esther Justus. From a Municipal Court judgment dismissing the complaint, plaintiff appeals. Reversed.

Argued before SCOTT, GIEGERICH, and McCALL, JJ.

Felix H. Levy, for appellant.

Henry J. Breen, for respondent.

GIEGERICH, J. The action was brought by the plaintiff, as agent of the owner of a milk dairy, to recover from the defendant the penalty of $50 provided by section 29 of the domestic commerce law, as amended by chapter 482, p. 1135, of the Laws of 1902, which, in part, reads as follows:

"Section 29. Unlawful detention of milk cans.—No person, shall without the consent of the owner or shipper, or his agent, use, sell, or dispose of, buy or traffic in any can, irrespective of its condition, or the use to which it may have been applied, belonging to any dealer in or shipper of milk or cream in this state."

The plaintiff proved, among other things, that he found the can in question with its top cut off, and full of ashes, beside the house of the defendant, who, in reply to his inquiries, stated that it was her ash can, and that the ashman had given it to her. Before the plaintiff had rested, the court intervened, calling attention to the fact that the top was off the can, that it was in a battered condition, and that its use as a milk can was destroyed, and thereupon summarily announced his dismissal of the action, and rendered judgment in favor of the defendant.

The appellant complains, among other things, of the form of procedure followed, and contends that, if the condition of the can was material, such condition ought to have been shown with more

regularity and in greater detail upon the record. For the reasons stated below, we are of the opinion that the condition of the can was material, and that a new trial should be had in order that the facts in this regard may be more fully presented.

The appellant argues that, since the can in question had once been a milk can, it came within the intent of the statute quoted, no matter how unfitted for its original use it might have become. This claim was made in Bell v. Moen's Asphaltic Cement Co., 32 App. Div. 362, 52 N. Y. Supp. 1084, in a case where the cans in question were old, dilapidated, and battered, and would not even hold tar until they had been coated inside with asphalt. In that case the court observed (page 364 of 32 App. Div., page 1085 of 52 N. Y. Supp.):

"The cans in question, probably when they came into the possession of the defendant, and certainly when they were discovered by the plaintiff, had practically ceased to be milk cans or useful for dairy purposes, just as surely as if they had been battered together into old metal, ready only for the melting pot. The use by the defendant of such cans, lined with hard asphalt, for holding tar and oil, was not within the inhibition of the statute."

The above decision was made upon chapter 25, p. 33, of the Laws of 1890, which did not contain these words of the present statute, namely, "irrespective of its condition, or the use to which it may have been applied," and which, the appellant claims, have the effect of altering the law as laid down in that case. With this contention we cannot agree. As was said in that case (page 363 of 32 App. Div., page 1084 of 52 N. Y. Supp.):

"Being highly penal, this act must be strictly construed, and strict construction requires that the cans, the use of which is complained of, shall be in such a condition as to be capable of use as milk cans; and the act may not be extended to cover cans which do not fall within the purview of the statute."

The appellant points to the opinion delivered in Monroe Dairy Ass'n v. Stanley, 65 Hun, at page 164, 20 N. Y. Supp., at page 19, for an exposition of the reasons why this act was passed, namely, that the farmers of that section of the state adjacent to New York City found by experience that their milk cans were not returned, and that such detentions became so frequent and so extensive that it could not be attributed to accident, but was evidently the result of design. The court further observed that it was essential that the law should be stringent and comprehensive in its scope and operation, in order to accomplish the purpose for which it was designed, pointing out that before the passage of the law it had been easy and comparatively safe for a dealer in New York City to retain a milk can, even though he did so with felonious intent, because, if he were detected, he could easily attribute its detention to mistake or oversight, and surrender its possession. Conceding all this, it is not apparent how the purpose of this series of acts, as there defined, would be furthered by following these cans after they had, in every correct use of the term, ceased to be milk cans, and could only be called such in the sense that they had been originally designed and once used for that purpose. Of course, if a can, otherwise in good condition or reparable, had a hole punched through

it maliciously or otherwise, the possessor of such a can would come within the purview of the statute, irrespective of its condition at the particular time.  So, also, if a can capable of holding milk were in fact used for holding some other liquid, or for any other purpose, it would still be within the purview of the statute, irrespective of the use to which it had been applied.  This, we think, is what the Legislature intended by the use of the words "irrespective of its condition, or the use to which it may have been applied."  A can made for use as a milk can, and still capable of use as such, does not cease to be a milk can merely because of some temporary condition or because of some other use, and still falls within the intent of this statute.  Not only would the application of this act to cases like the Bell Case above quoted and the one at bar be ineffective in furthering the purposes of the enactment, but would result in extreme injustice and hardship.  In the Bell Case it was in evidence that when the old cans became unfit for dairy use they were piled up by the thousands at the creameries in the country in a refuse heap, being valueless as old metal, and that people helped themselves to them.  What was true then, is probably true now. It is only natural that shippers of milk should lose all interest in what becomes of these worthless cans after they have outlived their usefulness, whichever end of the line they happen to be at when they reach such a state, whether in the city or in the country. It is inconceivable that the Legislature should have intended any such meaning as is contended for by the appellant in this case, which, without in any way furthering the purposes of the act or accomplishing any other useful purpose, would lay a trap for unwary and innocent persons who might thoughtlessly make some rude use of a receptacle abandoned and manifestly valueless for any other purpose.  The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

Judgment reversed, and new trial ordered, with costs to the appellant to abide the event.

McCALL, J., concurs in the result.

SCOTT, J. (concurring).  Of course, the judgment must be reversed, because there was really no satisfactory evidence as to the condition of the can.  I am not prepared to say, however, that the words of the statute, "irrespective of the condition or use to which it may have been applied," are not to be given a broader application than that which the defendant contends for.  It seems to me that it is at least open to argument that the words were used to discourage the defacement of a can so as to render it unfit to hold milk.  At all events, we are not now called upon to meet that question.

I therefore concur only in result.